The Honorable Tom Sloan State Representative, 45th District State Capitol, Room 446-N Topeka, Kansas 66612
Dear Representative Sloan:
You inquire whether proposed 2000 House Bill No. 2613, providing tax credits for anatomical donations, violates the federal prohibition against the buying and selling of human organs.
The Bill states in pertinent part:
 "For the taxable years commencing after December 31, 1999, there shall be allowed a credit against the tax liability of an individual imposed under the Kansas income tax act, an amount equal to: (1) $10 per pint of blood or derivatives or products thereof donated during a taxable year to a nonprofit blood, tissue or organ bank; or (2) $300 for the donation during a taxable year of one or more body parts, other than blood, to a bank or storage facility or hospital, as such terms are defined by K.S.A. 65-3209, and amendments thereto. . . ."
In the event that the allowed tax credit exceeds the tax liability of a taxpayer, the Bill authorizes a carry-over for deduction in succeeding years. Additionally, the Bill authorizes a credit against the tax liability of the estate of an individual under the Kansas Estate Tax Act. The credit is for $300 or the tax liability, whichever is less, "for the donation of one or more body parts to a bank or storage facility or hospital, as such terms are defined by K.S.A. 65-3209, and amendments thereto."[1]
At issue is whether the proposed $10 tax credit for each donation of blood and the $300 credit for each organ donation violate the federal prohibition[2] that makes it unlawful to "knowingly acquire, receive, or otherwise transfer any human organ for valuable consideration for use in human transplantation if the transfer affects interstate commerce."[3]
The federal criminal statute imposes a penalty of a fine of not more than $50,000 or imprisonment for not more than five years, or both a fine and imprisonment.[4]
With the exception of reasonable payments for the costs associated with the procurement of the organs,[5] the federal statute prohibits the payment of valuable consideration for the transfer of human organs used in human transplantation. A tax credit is valuable consideration, and thus we must determine whether the payment of the tax credit in subsection (1) for blood donation is prohibited and whether the tax credit in subsection (2) for the organ donation is prohibited. The prohibition is limited to the transfer of any human organ as defined:
 "The term "human organ" means the human (including fetal) kidney, liver, heart, lung, pancreas, bone marrow, cornea, eye, bone, and skin or any subpart thereof and any other human organ (or any subpart thereof, including that derived from a fetus) specified by the Secretary of Health and Human Services by regulation."[6]
There are, to date, no regulations specifying additional organs to be included in the definition.[7] The definition of human organ in the federal prohibition does not include blood or derivative products Thus, in our opinion Section 1(a)(1) of 2000 House Bill No. 2613, which provides a tax credit for the donation of blood, blood derivatives and products, does not violate the federal prohibition against the transfer, acquisition, or receipt of human organs for valuable consideration because there is no federal prohibition against the transfer of blood and blood derivatives.
The next section of the Bill provides a tax credit for donation of a body part. Since, the federal prohibition applies only to the transfer of human organs, only body parts that meet the definition of human organs are subject to the prohibition. We must next consider whether Section 1(a)(2) is prohibited in light of the federal prohibition's second limitation. The prohibition in the federal statute applies "if the transfer affects interstate commerce", as defined in section 321 (b) of Title 21.[8] It states:
 "The term `interstate commerce' means (1) commerce between any State or Territory and any place outside thereof, and (2) commerce within the District of Columbia or within any other Territory not organized with a legislative body."[9]
Congress' commerce power derives from the United States Constitution,[10] and it's scope is not confined to the regulation of commerce between the states but may reach intrastate activities which interfere with or obstruct the exercise of this granted power.[11] The United States Supreme Court has identified three broad categories of activity that Congress may regulate under its commerce clause: First, it may regulate the use of the channels of interstate commerce and thereby keep them free from immoral and injurious uses; second, Congress may regulate and protect the instrumentalities of interstate commerce, even if the threat derives from intrastate activities; and third, Congress' power includes the regulation of activities having a substantial relation to interstate commerce.[12]
Case law interpreting what constitutes a "substantial relation to interstate commerce" is extensive[13] and clearly demonstrates the far-reaching power of Congress to regulate under the power of the commerce clause. In light of Congress' power to regulate we must examine how the proposed legislation affects interstate commerce.
The Bill provides for a tax credit for the donation of body parts to a "bank or storage facility or hospital" as defined by K.S.A. 65-3209. A bank or storage facility is defined as "a facility licensed, accredited, or approved under the laws of any state for storage of human bodies or parts thereof."[14] Additionally any licensed hospital in any state or any hospital operated by the federal or state government may receive the donated body parts.[15] Interstate commerce is affected when, upon receipt of a body part, an approved hospital[16] or storage facility in the State contacts an organ procurement organization through the National Organ Procurement and Transplantation Network established by Congress to assist in the nationwide equitable distribution of organs.[17] The Network was established pursuant to the National Organ Transplant Act,[18] (NOTA) which encompasses the federal prohibition in question. This comprehensive act is commonly viewed as an extension of federal power into what has traditionally been considered the purview of state law.[19]
NOTA legislative findings indicate that Congress intended to reflect our society's moral value in attributing organ donation to altruistic motives and clearly set out to prevent human organs from becoming commodities in a for-profit marketing of human organs.[20] Evidence of this social norm can be found in case law[21] interpreting the state law which governs the donation of human organs, the Uniform Anatomical Gift Act.[23]
In summary, organ procurement and allocation is governed by federal law, the National Organ Procurement Act, which authorizes the Secretary of the U.S. Department of Health and Human Services to contract with a private organization to establish and operate the National Organ Procurement and Transplant Network to help organ procurement organizations equitably distribute and allocate organs for human transplantation. The federal legislation also makes it unlawful to transfer a human organ for valuable consideration if the transfer affects interstate commerce. Interstate commerce is affected when body parts for human transplantation enter the Network established by Congress. Thus, the language of the federal prohibition clearly makes it unlawful to provide valuable consideration for the transfer a body part which is a human organ as defined in the federal legislation. Accordingly, in our opinion the tax credit for the donation of body parts for human transplantation in proposed House Bill No. 2613 provides valuable consideration for the transfer of human organs in violation of federal law.
In conclusion, the tax credit for the donation of blood and blood products in Section 1(a)(1) of proposed 2000 House Bill No. 2613 does not violate the federal prohibition against the transfer of human organs for valuable consideration because the prohibition does not extend to blood or blood products. However, the tax credit as valuable consideration for the donation of body parts in Sections 1(a)(2) and 1(b) is prohibited by the federal law.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Guen Easley Assistant Attorney General
CJS:JLM:GE:jm
[1] Section 1(b), 2000 H.B. No. 2613.
[2] 42 U.S.C. § 274e, enacted as part of the National Organ Transplant Act, 42 U.S.C. § 273-274e (1988).
[3] 42 U.S.C. § 274e, subsection (a).
[4] Id., subsection (b).
[5] Id., subsection (a).
[6] Id., subsection (c)(1).
[7] U.S.C.A. Index and Finding Aids to the Code of Federal Regulations, July 1999.
[8] 42 U.S.C. § 274e, subsection (c) (3).
[9] 21 U.S.C. § 321, subsection (b).
[10] United States Constitution, Art. I, § 8, cl. 3.
[11] United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609
(1941); United States v. Wrightwood Dairy Co., 315 U.S. 110, 62 S.Ct. 523,86 L.Ed. 726 (1942).
[12] U.S. v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d (1995) (citations omitted).
[13] Hodel v. Virginia Surface Mining Reclamation Ass'n, Inc.,452 U.S. 264, 101 S.Ct. 2352; 69 L.Ed.2d 1 (1981) (intrastate coal mining); Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357;28 L.Ed.2d 686 (1971) (intrastate extortionate credit); Katzenbach v.McClung, 379 U.S. 294; 85 S.Ct. 377, 13 L.Ed.2d 290 (1964) (restaurants utilizing interstate supplies); Heart of Atlanta Motel, Inc. v. UnitedStates, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964) (inns and hotels catering to interstate guests) and Wickard v. Filburn, 317 U.S. 111,63 S.Ct. 82, 87 L.Ed. 122 (1942) (homegrown wheat).
[14] K.S.A. 65-3209 (a).
[15] K.S.A. 65-3209 (d).
[16] As a condition for receipt of medicare funds, hospitals are required to contact a regional organ procurement organization,42 C.F.R. § 482.45 and establish protocols for the identification of potential organ donors, 42 U.S.C. § 1320b-8(a)(1)(A) (1988).
[17] 42 U.S.C. § 274(b)(2) (1988).
[18] 42 U.S.C. § 273-274e (1988).
[19] Crespi, "Overcoming the Legal Obstacles to the Creation of a Futures Market in Bodily Organs, " 55 Ohio State L. J. 1, 14 (1994).
[20] H. Conf. Rep. No. 1127, 98th Cong., 2d Sess., 1984 U.S. Code Cong. and Adm. News 3978 and 3982.
[21] Perry v. Saint Francis Hospital and Medical Center, Inc.,886 F. Supp. 1551, 1563 (D.Kan. 1995)[22]
[22] 886 F. Supp. 1551 (D.Kan. 1995).
[23] K.S.A. 65-3209 et seq.